# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

STEVEN HAYES,                           )
                                        )
                    Plaintiff,          )
vs.                                     )           NO.  CIV-10-0680-HE
                                        )
STATE FARM FIRE AND CASUALTY            )
COMPANY,                                )
                                        )
                    Defendant.          )

## ORDER

Plaintiff Steven Hayes sued defendant State Farm Fire and Casualty Company ("State Farm") asserting claims for breach of contract, bad faith and negligence arising out of two separate claims for damage to his boat dock.  Both parties have moved for summary judgment,[1] which is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a).  The court has viewed the evidence and any reasonable inferences that might be drawn from it in the light most favorable to the nonmoving party, and concludes that plaintiff's motion should be denied and defendant's should be granted in part and denied in part.

---

[1]*Plaintiff only seeks partial summary judgment.  The court agrees with defendant that the relief plaintiff seeks is not clear.  For example, he asserts that State Farm violated the Oklahoma Unfair Claims Settlement Practices Act and "committed bad faith," yet appears to seek summary judgment only on his breach of contract claims. Doc. #48, p. 14.  Rather than addressing the motions separately, the court has considered plaintiff's arguments in conjunction with defendant's motion.*

Background[2]

September 13, 2008, claim

Plaintiff had a boat dock on Grand Lake in Oklahoma that was covered by a homeowner's insurance policy issued by State Farm. Plaintiff was advised on September 15, 2008, that high winds on the lake had damaged his boat dock. He was not at the lake at that time. He testified he received several phone calls informing him that the dock was leaning and would tip over if it was not repaired. Plaintiff reported the damage to his State Farm Agent, Marcia Corcoran, on September 15, 2008.[3] She told him the loss was covered under his policy. Plaintiff testified he told Ms. Corcoran that he was going to start calling repairmen immediately to repair the dock because it was going to tip over. She did not advise him he could not make any repairs until State Farm examined the dock.

Ms. Corcoran reported the claim to State Farm on September 15, 2008. The next day she called State Farm wanting approval for repairs to plaintiff's dock , stating the dock's top was leaning and was in danger of "dumping over." Doc. #48, Exhibit 2, note 3.[4] The claims

---

[2]*The facts are taken from both summary judgment motions. To a large extent the facts are not disputed. Both sides, while not offering evidence to dispute certain facts, did not admit them. For example, defendant "[a]dmitted that Plaintiff claims he received a call that the boat dock was about to tip over." Doc. #53, pp, 1-2. Plaintiff states that "[f]or purposes of responding to [defendant's] motion, Plaintiff admits that Defendant has accurately recited the information that it has listed in its claim file but does not admit that the facts are material or that they are undisputed." Doc. #55, p. 3, ¶2.*

[3]*The actual date of loss was September 13, 2008. The parties refer to Ms. Corcoran as plaintiff's agent.*

[4]*Because of the multiple briefs that have been filed with attached exhibits, the exhibits will be cited by document and exhibit number, e.g." Doc. ___, Exhibit ___."*

file reflects Ms. Corcoran told State Farm agent David Thompson that plaintiff already had a contractor securing the dock and that Thompson responded, explaining to her that State Farm would "need to evaluate wind vs. water situation and if wind we could discuss but needed to evaluate correct COL."[5]  *Id.*  The claim note indicates Thompson contacted "Joe the contractor," who said the dock was secured[6] and then, prior to 2:56 p.m., called plaintiff and explained

> that contractor who has inspected and secured this was not willing to state wind vs water (wave action) but he did have it secured to the point where it would not dump over.  I expl there was a question of coverage and that he needed to stop until we inspected.  He said that his agent said there was full coverage for the repairs and I finally committed to providing coverage to him based upon this for the repairs to this point but that the remaining repairs would have to be evaluated.

*Id*.  The 9/16/08 entry reflects that plaintiff was going to contact his contractor and discuss the matter and Thompson "referred him back to his agents office if the contractor does not feel the structure is secure."  *Id.*  The log reflects that later that same afternoon Denise Mills from State Farm also spoke with plaintiff and told him a claims representative would need to inspect to determine the cause of loss.

According to the claim file, the next day (September 17), when State Farm agent Lou Basile called plaintiff to schedule an inspection, plaintiff stated that he had told the contractor not to stop the repairs and that they would be completed by Friday.  Basile told plaintiff he

---

[5]*The court assumes the reference is to cause of loss.*

[6]*The note states: "they do have the dock to a point now that it will not dump over."  Doc. #48, Exhibit 2, note 3.*

could not do an inspection until the following Monday, which was seven days after the loss was incurred.  He explained that the contractor had told State Farm the dock had been stabilized and that, if State Farm was not allowed to inspect the dock, it might not pay for the loss.  Doc. #55, Exhibit 4, note 11. The claim log reflects plaintiff then stated "that the dock ha[d] not been stabilized and that repairs [were] going to continue and that the contractor ha[d] taken photos and [was] going to provide a written opinion on the COL." *Id.*  Basile called the contractor who said he was at the site and  "that wind was wrecking the dock and it was coming apart."  *Id.*  The statement prepared by Affordable Dock, dated 9/15/08, described the damage to the dock as "complete dock damaged by wind," "top deck ready to turn deck over & sink deck."  The invoice specified that the charges were to "Repair Boat Dock Damaged from wind."  Doc. #55, Exhibit 6.

Plaintiff attested that, several days after he spoke with Ms. Cocoran, he was advised by a State Farm adjuster that only temporary repairs could be made.  He said he advised Affordable Dock of the limitation and "relied on Affordable Dock to do their job." Doc. #55, Exhibit 2.  Plaintiff also said that he had to make immediate repairs to the dock or it was going to sink according to information provided him by both Affordable Dock and other witnesses.  He stated he never refused to stop making permanent repairs, but did refuse to stop making any repairs.

Basile inspected the dock on September 22, 2008.  The claim file reflects he noted that the dock repairs were complete, including pipe welding and concrete replacement.  It also indicates that Basile did not see how wind could damage the very large, "very heavily

4

constructed steel and concrete" dock, but not damage the wood fence or comp shingles on the house that was close by.  Doc. #55, Exhibit 4, note 13.  Because the dock had "no vertical surfaces for the wind to catch," Basile he did not understand how wind could affect it "other than to get under the upper deck and lift the entire structure out of the water*." Id.*

The next file entry reflects State Farm team manager Phil Dixon's assessment of the claim.  *Id.* at note 16.  The note indicates he reviewed the file and photos on September 25, 2008, made a time line and then concluded that he did not see any damage to the dock, neighboring structure, fences or trees that could be attributed to a windstorm.  The maximum wind speeds on the date of loss – 35 mph – were insufficient, he determined, to cause damage to the boat dock.  He thought the dock might have been constructed incorrectly as it was "top heavy" and there were "no cross-braces to prevent lateral motion of the upper deck, especially from wave action below." *Id*.

Dixon also noted that, while the inspection was conducted within a reasonable period of time and the contractor had reported the dock was stabilized, the  insured had completed all repairs before State Farm could inspect the dock.  This occurred he noted, even though the insured had been advised by two State Farm agents that there would be a coverage issue if the repairs were done before the dock was inspected.  Dixon determined the policy excluded coverage for several reasons, including the insured's failure to comply with the policy condition that State Farm be allowed to inspect before repairs were completed.  *Id.*

The claim file shows the next contact between plaintiff and defendant occurred on October 13, 2008, when State Farm agent Kathy Romanello called plaintiff, told him the

claim had been denied and explained why.  The file note states that plaintiff insisted his agent's office had told him the loss would be covered and that was why he proceeded with repairs.  He also asked to speak with Dixon.  *Id.* at note 17.  The file reflects Dixon spoke to plaintiff the next day.  The entry indicates plaintiff was upset, said he had been told by his agent that the claim was covered and that Dixon responded that once the claim was reported State Farm "immediately advised him of a coverage issue and [that] we needed to inspect the dock BEFORE repairs were completed." *Id*. at 18.  It also indicates that Dixon told plaintiff that "[t]he wind speeds were not sufficient to have caused these damages but the force of wave action would," and plaintiff "disagreed saying he was told it was covered so he 'went with it.'" *Id.*

Plaintiff submitted a claim for $9,000 for repairs to the dock.  The claim was denied by letter dated October 20, 2008, for violation of the "conditions" section of the insurance policy.  The explanation given for the denial was that State Farm was "not given an opportunity to inspect the dock prior to repairs being made," which prevented it from confirming "whether the damages were covered."  Doc. #46, Exhibit 5.  State Farm also stated in the letter that, while it had asked plaintiff on September 16, 2008, and again on September 17, 2008, to halt the repairs so it could view the damage, all repairs were completed when it inspected the property on September 22, 2008. *Id.*

The same day the claim was denied, Ms. Corcoran called Dixon to discuss the claim.  The claims file reflects that she asked if State Farm would consider paying the cost of the temporary repairs since State Farm had asked plaintiff to incur those costs to stabilize the

dock so State Farm could inspect it.  Dixon told her that "it appears the cost is rolled into the $9000 price the contractor gave him."  *Id.* at note 23.  He also told her he would consider paying for the temporary repairs subject to plaintiff's deductible, after she offered to see if the temporary repairs costs could be segregated from the other repair work that was done. *Id.*  Plaintiff's deductible on his September 13, 2008, claim was $1500.

In early November 2008, State Farm received an invoice from Affordable Dock Service for $6,500.  The invoice, addressed to plaintiff, includes charges for 280 feet of 33" by 20' uprights, removing and repouring support upright concrete bases and painting repaired welds.  The claims file reflects that State Farm agents Romanello and Dixon discussed the invoice on November 11, 2008.  They concluded that, with the exception of the welds, most of the items on the bill would not be considered temporary repairs.

The claim file then indicates a series of conversations took place between State Farm agents and Gerald at Affordable Dock.  On November 29, 2008, Gerald said "he was busy but if [State Farm] could call back next week he [would] break down the estimate to break out the cost of the welds."  Doc. #55, Exhibit 4, note 29.  On December 8, 2008, State Farm agent Chris Rice called and told Gerald that State Farm needed to know the cost of the welds to "decipher temp vs permanent repairs."  *Id.* at note 30. Gerald said he would do the breakdown and resubmit the bill.  The same entry reflects that Rice then phoned plaintiff and told him of the conversation with Gerald and that plaintiff was upset and did not understand the delay.  The entry does not reflect that plaintiff mentioned any additional damage to his dock or that the dock had sunk.

7

Another exchange took place between State Farm and Gerald on December 16, 2008. Gerald said he was working on the revised bill as they spoke and would send it by the first of the following week. *Id.* at note 32. State Farm then sent plaintiff a letter dated January 6, 2009. In it State Farm advised plaintiff that his claim was pending, that it needed a breakdown of the costs of the welds on the dock, and had asked Gerald for the information twice.

Around January 26, 2009, Affordable Dock Service sent State Farm a revised invoice for $6,500. The claims file indicates the invoice was reviewed by several State Farm employees. Dixon looked at it on January 28, 2009, and thought it was too high. Romanello then discussed the invoice with Roy Alley, another claims representative who defendant asserts was experienced in handling boat dock claims. Alley told her that it did "not appear the contractor made any temporary repairs (such as securing the dock to the shore with ropes, lines, etc)." Rather it appeared "they went in and just started rebuilding the dock as they are charging for two days worth of work for several men to weld, etc." *Id.* at note 39.

State Farm sent plaintiff a letter dated February 26, 2009, confirming his conversation with Ms. Corcoran pertaining to temporary repairs to plaintiff's boat dock. The letter stated that State Farm was "unable to consider any payment under [plaintiff's] claim file" because the invoice provided by Affordable Dock Service indicated that "rather than making any temporary repairs to stabilize the dock before making permanent repairs, they proceeded with permanent repairs to return the structure to its pre-loss condition." Doc. #46, Exhibit 9. While State Farm had considered what might constitute temporary repairs, such as

8

"towing/returning the dock to its original position and securing it with cables and/or straps," it advised plaintiff that those costs would not exceed his $1,500 wind/hail deductible based upon the scope of damages.  *Id.*

September 30, 2008, claim

On  March 6, 2009, plaintiff reported a second claim to State Farm.  The claim file indicates Ms. Corcoran called State Farm and said plaintiff had called and told her that "all $9000 were temporary repairs and the dock [had] now sunk."  Doc. #46, Exhibit 3, note 52. The claims file reflects that Melanie Shafer of State Farm spoke with plaintiff on March 13, 2009.  He told her that the boat dock sank approximately two weeks after the initial damage and that he had spent $4,000 to $5,000 to clean up the debris, hiring the same people who had done the temporary repairs.  He admitted that he had not told the prior claims representative that the dock had sunk.  Doc. #46, Exhibit 10, note 9.

While State Farm assigned 9/30/08, as the date of loss, it never determined if that was correct, despite knowing that plaintiff was uncertain as to the exact date.  In March of 2009, while reviewing plaintiff's claim files, Christi Myers of defendant's Special Investigative Unit,[7] reviewed the claim of another insured who was "the neighbor of the insured and who's [sic] boat was in the insured's dock at the time their boat sank."  *Id.* at note 16.  Ms. Myer made a note in the claim file reflecting that the date of loss on the neighbor's claim was November 20, 2008, which was inconsistent with the date of loss on plaintiff's second claim.

---

[7]*It is unclear why Ms. Myers was assigned the task of reviewing plaintiff's claims.  See Doc. #74, Exhibit 1, p. 88.*

*Id*

Perry Kurth, who was working on a house two doors down from plaintiff's house on November 20, witnessed the boat dock in the process of capsizing, though he did not actually see it go under. He saw that it was leaning and went and looked at it "and his dock was about to go down, and so we went back to the – to work, and then it wasn't long after that within hours it went down." Doc. #53, Exhibit 7, pp. 25. He testified that the lake that day was really rough and the waves were really big, *id.,* and that both the wind and waves "caused the dock to come down." Doc. #61, pp. 37-38.[8]

Plaintiff's neighbors, the Tremls, who also are insured by State Farm, kept their boat at plaintiff's dock. It sank along with plaintiff's dock. They submitted a claim to State Farm for the loss of their boat and their claim file reflects State Farm was notified on November 20, 2008, that the boat was sinking.[9] Mrs. Treml contacted State Farm on November 24, 2008, and said her husband had received a call telling him that the lake was very rough, water was going over their boat, and the dock was going under. She had called lake patrol, but they could not put a boat in the water due to the lake conditions. However, lake patrol drove to the dock and then phoned Ms. Treml and told her that the dock and boat were completely under water. The file entry does not identify the dock as belonging to plaintiff. Ms. Treml

---

[8] *At times plaintiff has mischaracterized the evidence. For example, he asserts in his reply, Doc. #61, that weather records indicate that on 9/13/08 and 11/20/08 wind speeds in the counties near Grand Lake were between 36.9 and 45.4 mph, and 28.9 and 36.7 mph, respectively, citing Doc. #61, Exhibit 3. However, those were the maximum speeds, the average wind speeds on those dates were considerably less.*

[9] *The assigned date of loss for the boat was November 20, 2008.*

took photos after her boat sank or flipped, but State Farm did not obtain them from her. The boat was taken by trailer to Jerry's Dock Service, where State Farm inspected it on December 2, 2008.

The claim file reflects a conversation took place on April 13, 2009, between State Farm agent Tim Andrew and plaintiff about plaintiff's second claim. Plaintiff told him there was no longer a boat dock, that it had been cleaned up. The note indicates plaintiff said when the top blew off his agent said there was coverage and he "was told to clean up the debris. It sank later – so he had it all cleaned up." Doc. # 46, Exhibit 410 note 20. He also stated that he had given State Farm the receipts for repairs and it could inspect any time.

State Farm sent plaintiff a reservation of rights letter dated April 13, 2009. The letter informed plaintiff that there was a question as to whether State Farm was obligated under the policy for his September 30, 2008, loss because it was not reported in a timely fashion, State Farm was not allowed the opportunity to inspect and there was a question as to whether the property sustained damage that was insured under the policy. Doc. #46, Exhibit 11. By letter dated May 29, 2009, State Farm denied plaintiff's second claim, again because he not complied with the policy's post-loss conditions. The reasons State Farm gave for refusing to pay the claim were the same as those stated in the reservation of rights letter. Doc. #48, Exhibit 8.

State Farm did not send a field adjuster to conduct a scene inspection regarding plaintiff's second claim or perform the tasks that are typically performed when a claim is made. The investigation was limited to interviewing plaintiff and reviewing his prior claim

11

file.

In the process of adjusting plaintiff's second claim, Melanie Schafer, the first State Farm adjuster assigned to that claim, looked at the investigation conducted with respect to the Treml boat claim. Ms. Schafer knew there was a discrepancy in the date of loss on plaintiff's second claim, knew the Tremls' boat was in plaintiff's dock when it sank and knew the date of loss of the Treml claim.  However, she did not attempt to determine the correct date of loss for plaintiff's second claim.  At the time he denied the claim, State Farm Adjuster Jason Hurley had only ten months of experience as a licensed insurance professional.  Hurley admitted during his deposition that he had denied the claim without talking to witnesses. reviewing documentary evidence or visiting the site.

The dock remains at the bottom of the lake.  Plaintiff's homeowner's policy excluded coverage for loss due to water damage, including surface water and waves, whether driven by wind or not.

Plaintiff filed suit against State Farm on September 21, 2009.  A second amended complaint was filed on December 9, 2010, which added a negligence claim based on Marcia Corcoran's conduct.

Analysis[10]

 Defendant seeks judgment on all plaintiff's claims.  It asserts plaintiff's breach of contract claim based on his first loss is untimely and that both of his contract claims are

---

[10]*As this is a diversity action the substantive law of the State of Oklahoma applies.*

barred because plaintiff violated the conditions section of the insurance policy.  State Farm contends plaintiff cannot recover on his bad faith claims because a reasonable dispute existed as to coverage under the policy for both losses.  Finally, it asserts that plaintiff's negligence claim fails because it is time-barred and because of the absence of either a duty or damages proximately caused by a breach of duty.

In his motion, plaintiff essentially seeks summary judgment on his breach of contract claims.  He proceeds in a round about manner by asking for judgment on the reasons State Farm gave for denying his two claims.[11]

Plaintiff's homeowner's policy contained the following pertinent provisions:

### SECTION I - CONDITIONS

2. **Your Duties After Loss**. After a loss to which this insurance may apply, you shall see that the following duties are performed:

> a. give immediate notice to us or our agent....;
>
> b. protect the property from further damage or loss, make reasonable and necessary temporary repairs required to protect the property, keep an accurate record of repair expenditures;
>
> \*\*\*
> d. as often as we reasonably require:
> (1) exhibit the damaged property;

6. **Suit Against Us.** No action shall be brought unless there has been compliance with the policy provisions. The action must be started within one year after the date of loss or damage

---

[11]*In his reply brief in support of his summary judgment motion plaintiff inappropriately addresses issues raised by defendant in its motion for summary judgment.  Doc. #61, p. 6.  He also raises a new issue – unclean hands, which the court has not considered.*

Doc. #46, Exhibit 1, p. 13-14.

The policy also contains the following exclusions:

## SECTION 1 - LOSSES NOT INSURED

1. We do not insure for any loss to the property described in Coverage A which consists of, or is directly and immediately caused by, one or more of the perils listed in items a. through n. below, regardless of whether the loss occurs suddenly or gradually, involves isolated or widespread damage, arises from natural or external forces, or occurs as a result of any combination of these:

    \*\*\*

    c. freezing, thawing, pressure or weight of water or ice, whether driven by wind or not, to a ... dock;

    \*\*\*

2. We do not insure under any coverage for any loss which would not have occurred in the absence of one or more of the following excluded events. We do not insure for such loss regardless of: (a) the cause of the excluded event; or (b) other causes of the loss; or (c) whether other causes acted concurrently or in any sequence with the excluded event to produce the loss; or (d) whether the event occurs suddenly or gradually, involves isolated or widespread damage, arises from natural or external forces, or occurs as a result of any combination of these:

    \*\*\*

    c. **Water Damage**, meaning:

    (1) flood, surface water, waves, tidal water, tsunami, seiche, overflow of a body of water, or spray from any of these, all whether driven by wind or not;

*Id.* at pp. 9-10.

Statute of limitations – September 13, 2008, claim

Defendant contends plaintiff's breach of contract claim for his initial loss is barred by the "Suit Against Us" provision in the policy.  It provides as follows: " No action shall be brought unless there has been compliance with the policy provisions. The action must be started within one year after the date of loss or damage."  Doc. #46, Exhibit 1, p. 14. Because the damage occurred prior to September 15, 2008 (the date it was reported)  and the lawsuit was not filed until September 21, 2009, defendant argues the claim is untimely.

Plaintiff responds that the cases defendant relies on all involved fire insurance policies, to which a statutory one year limitations period applies, 36 Okla. Stat. § 4803(G). He acknowledges that Oklahoma law allows insurers to shorten the time period within which an action for breach of a property insurance policy can be brought,[12] but asserts the policy provision is unenforceable under the reasonable expectations doctrine.  Plaintiff contends the two "suit against us" clauses in the policy, one which includes a limitations period and the other which does not, creates an ambiguity.  He maintains it would be not be clear to a person unfamiliar with reading policies that there are two standards for the right to sue State Farm, depending on the nature of the claim.  Plaintiff asserts that both clauses are buried in the policy which he "has no recollection of ever receiving." Doc. #55, p. 8.  He also argues that State Farm cannot rely on the limitations period because the insurer has failed to offer evidence demonstrating it explained the limitations period to him, that he understood it or

---

[12]*The one year limitations period in the policy defendant issued plaintiff is authorized by 36 Okla. Stat. § 3617.*

that he even knew it was in the policy.[13]

In Max True Plastering Co. v. U.S. Fidelity & Guar. Co., 912  P.2d 861, 870 (Okla. 1966) the Oklahoma Supreme Court "adopted the doctrine of reasonable expectations ... [which has] "evolved as an interpretive tool to aid courts in discerning the intention of the parties, when the policy language is ambiguous or when an exclusion is masked by technical or obscure language or hidden in a policy's provisions."  American Economy Ins. Co. v. Bogdahn 89 P.3d 1051, 1054 (Okla. 2004) (internal citation and quotations omitted). However, the doctrine does not apply here as the one year limitations period is not ambiguous.

The policy is divided into two sections – one pertaining to  coverage for property loss and one pertaining to coverage for personal liability when "suit is brought against an **insured** for damages because of **bodily injury** or **property damage** ...."  Doc. #55, Exhibit 1, p. 15. The limitations period pertaining to claims for property loss is set out under "Conditions" in a separate paragraph beginning with "Suit Against Us" in bold print.[14]  *Id.* at p. 14. The pertinent language – "[t]he action must be started within one year after the date of loss or damage" – is simple and clear. Courts have  repeatedly  concluded  such  clauses  are

---

[13]*Plaintiff also asserts defendant should be precluded from asserting that his breach of contract claim is untimely because it failed to "plead that the breach of contract claim was barred by the 'suit against us' clause of the policy."  Doc. #55, p. 8.  Plaintiff blatantly ignores paragraph 29 of defendant's answer [Doc. #22].  Under Affirmative Defenses, defendant alleges in ¶29: "State Farm asserts that the Plaintiff's claims are barred by the statute of limitations."*

[14]*Plaintiff was represented by counsel months before the limitations period expired. See Doc. #46, Exhibit 10, note 2.*

unambiguous and enforceable. *E.g.* <u>Teske v. State Farm Fire & Cas. Co.</u>, 2009 WL 4254583

(W.D.Ky. 2009). They also have refused to invalidate them by applying the doctrine of

reasonable expectations. *Id.* at *3.

The case cited by plaintiff, <u>Blue v. Universal Underwriters Life Ins. Co.</u>, 612

F.Supp.2d 1201 (N.D.Okla. 2009) is distinguishable. The limitations period at issue in <u>Blue</u>

> was contained on the back of the Sample Copy/Borrowers Copy of the
> pre-printed Application for Insurance.  Additionally, Defendant's Exhibit 5,
> page 4001, reveals a densely packed page of 21 paragraphs in small print with
> 12 subheadings.  The last sentence, in the same size font, within the sixth
> subheading "Rules for Filing a Disability Claim," states: "You can't start any
> legal action more than three years after the proof is filed."  Further, the
> positioning of this language under the subheading "Rules for Filing a
> Disability Claim," would not necessarily alert Plaintiff she was barred from
> "any legal action" as opposed to on a "disability claim."  Unlike the exclusions
> for Suicide and Misstated Age, which are capitalized and underlined under a
> subheading of "What we won't pay" on that same page, the key phrase at issue
> is not capitalized, underlined, positioned in a place, nor printed in a form
> which would attract the reader's attention.

*Id.* at 1204-05.

Plaintiff cannot avoid the effect of the "suit against us" clause by claiming ignorance

of the policy's terms. <u>Travelers Ins. Co. v. Morrow</u>, 645 F.2d 41, 44 (10th Cir. 1981) ("The

failure of an insured to read the policy does not relieve him from its provisions."); *see*

*generall*y <u>Hill v. Agri-Risk Servs.</u>, 827 P.2d 904, 906 & n.3 (Okla.Civ.App. 1992).  He also

cannot rely on his lack of recollection of receiving the policy to avoid its provisions.  *See*

<u>Coney v. Homesite Ins. Co.</u>, 2010 WL 2925941, at *3-4 (D.N.J. 2010).  Even if plaintiff had

been unaware of the contractual limitations period, State Farm cited the provision in letters

it sent him in April and May 2009, several months before the limitations period ran.  Doc.

#60, Exhibits 1, 2.

Plaintiff's lawsuit was not filed within one year after the date of the initial damage to his boat dock. As the court has determined that the "suit against us" clause in the insurance policy was not ambiguous and was enforceable, it operates to bar plaintiff's breach of contract claim based on the damage to his dock that occurred on September 13, 2008.[15]

Bad Faith – September 13, 2008 claim

Plaintiff can pursue a bad faith claim with respect to defendant's handling of his September 13, 2008, loss, even though his breach of contract claim is time-barred. *See* McCarty v. First of Georgia Ins. Co., 713 F.2d 609, 612 (10th Cir. 1983) ("In short, the prior dismissal of the contractual claim on the statute of limitations ground does not trench upon the merit of the instant tort action. The breach of fair dealing claim is cognizable if appellants can prove that they were entitled to payment on the underlying insurance claim."). As "a number of Oklahoma cases can be found which at the least suggest that a claim must ultimately be determined to have been a covered claim, which should have been paid, for a bad faith claim to be cognizable," Oldenkamp v. United American Ins. Co., 619 F.3d 1243, 1249, note 3 (10th Cir. 2010), the court must consider the validity of plaintiff's contract claim. *See* Davis v. GHS Health Maint. Org., Inc., 22 P.3d 1204, 1210 & n. 24 (Okla. 2001).

In light of plaintiff's evidence, including his testimony that he told Affordable Dock

---

[15]*Plaintiff does not argue that defendant waived the limitations defense or should be estopped from asserting it. The determination that plaintiff's contract claim based on the September 13, 2008, damage to his boat dock is untimely, eliminates the need to consider the arguments in plaintiff's summary judgment motion directed to that claim.*

to only make temporary repairs and that the repairs done were necessary to stabilize the boat dock, the court concludes material fact questions exist as to whether plaintiff's contract claim would be barred because he failed to comply with the policy condition that he "exhibit the damaged property." Having made that determination, the court will proceed to consider plaintiff's bad faith claim.

The tort of bad faith was first recognized by the Oklahoma Supreme Court in Christian v. American Home Assur. Co., 577 P.2d 899 (Okla. 1978). It arises from the insurer's implied duty to deal fairly and act in good faith with its insured. Southern Hospitality, Inc. v. Zurich American Ins. Co., 393 F.3d 1137, 1142 (10th Cir. 2004). The duty is not breached when the insurer refuses to pay a claim or litigates a dispute with its insured, if there is a legitimate dispute as to coverage or the amount of the claim and the insurer's position is reasonable and legitimate. Id. Otherwise put, "[t]he insurer will not be liable for the tort of bad faith if it 'had a good faith belief, at the time its performance was requested, that it had a justifiable reason for withholding payment under the policy.'" Oulds v. Principal Mut. Life Ins. Co., 6 F.3d 1431, 1436 (10th Cir. 1993) (quoting McCoy v. Oklahoma Farm Bureau Mut. Ins. Co., 841 P.2d 568, 572 (Okla. 1992)).

In determining whether to pay a claim, the insurer must conduct an investigation "reasonably appropriate under the circumstances." Willis v. Midland Risk Ins. Co., 42 F.3d 607, 612 (10th Cir. 1994) (quoting Buzzard v. Farmers Ins. Co., 824 P.2d 1105, 1109 (Okla.1991)). "An investigation does not meet this standard if (1) the manner of investigation hints at a sham defense or otherwise suggests that material facts were

overlooked, or (2) the insurer intentionally disregarded undisputed facts supporting the insured's claim." Sims v. Great American Life Ins. Co. , 469 F.3d 870, 891 (10th Cir. 2006), citing Oulds, 6 F.3d at 1442.  State Farm's actions are evaluated in light of the facts it knew or should have known at the time it was asked to perform its contractual obligation.  Oulds, 6 F.3d at 1437.  "If the insurer fails to conduct an adequate investigation of a claim, its belief that the claim is insufficient may not be reasonable." Willis, 42 F.3d at 612.

"When a plaintiff bases a bad faith claim on an inadequate investigation theory, 'the insured must make a showing that material facts were overlooked or that a more thorough investigation would have produced relevant information.'" Sellman v. AMEX Assur. Co., 274 Fed.Appx. 655, 658 (10th Cir. 2008) (unpublished) (quoting Timberlake Const. Co. v. U.S. Fidelity and Guar. Co., 71 F.3d 335, 345 (10th Cir. 1995)).  Plaintiff focuses on defendant's asserted failure to investigate the extent of the repair work done on his dock.  He asserts that "[t]he real dispute seems to be whether the repairs made by Plaintiff were permanent or temporary in nature and/or if temporary repairs could even be made due to the nature of the dock and the damage."  Doc. #61, p. 8.[16]

By the time State Farm inspected the boat dock all repair work had been completed. Plaintiff has submitted evidence that undercuts defendant's explanation as to what "temporary repairs" could have been made, *compare* Doc. #55, Exhibit 4, note 39 *with* Exhibit 8, p. 120, which supports his claim that State Farm breached the contract.  However,

---

[16]*The temporary/permanent nature of the repairs was only part of the dispute. There was also the question of coverage – whether the damage to the dock was caused by wind and/or water.*

he has not "show[n] that [State Farm] overlooked material facts or 'that a more thorough investigation would have resolved the discrepancy' involved in the legitimate dispute." Sellman, 274 Fed.Appx at 658 (quoting Oulds, 6 F.3d at 1442).[17]

Plaintiff contends State Farm should have interviewed Perry Kurth or his neighbors, yet he does not show what information they would have offered that would have helped resolve the conflict. Similarly, plaintiff criticizes State Farm for not taking "a recorded statement of Gerald with Affordable Dock to fully set forth the repairs he made and why they were necessary," Doc. #55, p. 18, but he does not offer any evidence of what Gerald would have said.[18] The record reflects that State Farm had invoices prepared by Affordable Dock and spoke with Gerald several times. More is required to show that an investigation is unreasonable than merely to list people who could have been interviewed. Plaintiff must offer some evidence of the information the individuals could have provided which was material or pertinent to resolution of the claim.

While plaintiff asserts that State Farm was dilatory in waiting seven days to view the damage, he does not cite any evidence substantiating that assertion. Doc. #55, p. 11. Plaintiff also faults State Farm for not sending a boat dock expert to the site to determine whether the repairs made were temporary. However, plaintiff has not shown what any such

---

[17]*In arguing the defendant acted in bad faith, plaintiff ignores evidence that is in the record. For example, he asserts that "[t]he evidence gathered by State Farm clearly indicates that the 9/13/08 loss was caused by wind." Doc. #55, p. 10. However, when the State Farm agent inspected the site, he found no wind damage to surrounding structures. Doc. #46, Exhibit 3, note 13.*

[18]*As defendant notes, while plaintiff testified that, as far as he knew, the repairs that were done were only temporary, Doc. #60, Exhibit 4, p. 83, Affordable Dock only did one set of repairs.*

21

expert would have discovered  – what material facts an expert would have found in a situation such as existed here, where all repair work had been completed.[19]

"Under Oklahoma law ... an insurer's investigation need only be reasonable, not perfect." Roberts v. State Farm Mut. Auto. Ins. Co., 61 Fed.Appx. 587, 592 (10th Cir. 2003) (unpublished) (quoting Buzzard, 824 P.2d at 1109).   The crux of plaintiff's claim is that he disagrees with State Farm's analysis of the evidence before it.  As he has not shown what other evidence the insurer should have found and considered in making its coverage determination, plaintiff has not demonstrated the existence of a material fact dispute as to the reasonableness of defendant's investigation.

Although both parties focus on the investigation aspect of plaintiff's bad faith claim, he also alleges that defendant's denial of the claim was unreasonable.  A bad faith claim will not lie, though, if there is a legitimate dispute regarding the claim's validity.   While the court has concluded that plaintiff may have been entitled to coverage but for the limitations defense, it is "not persuaded, however, that this resolution was so obvious and inevitable that Defendant acted unreasonably in denying Plaintiff's claims." Flores v. Monumental Life Ins. Co., 620 F.3d 1248, 1256 (10th Cir. 2010).

Plaintiff refused to admit that the information listed in State Farm's claim file was

---

[19]As of 9-17-08, State Farm was aware that plaintiff's contractor had taken photographs of the dock before the repair work began, which could be used to determine the repair work needed to stabilize the dock. While he admitted he was not an expert in boat dock construction, the State Farm agent who examined the dock noted there was a discrepancy between the damage reflected in the contractor's "before repair" photo and the contractor's description of the damage to the dock. Doc. #55, Exhibit 7, p. 71 ("[T]he contractor was saying that every single post was broken, that the dock was leaning and in jeopardy was falling over, but his photo doesn't show that." ).

undisputed, Doc. #55, p. 3, ¶2, but did not offer evidence controverting most of the entries. He thereby admitted the bulk of what is found in defendant's claim file. See Fed.R.Civ.P. 56(c)(1)(A). The undisputed portions of that file, coupled with other evidence in the record, demonstrates that a legitimate disagreement existed over whether plaintiff failed to comply with the post-loss condition[20] requiring him to display the property and thus prevented State Farm from determining whether the loss was covered under the policy or, if covered, what amount was owed.[21]

Plaintiff has not met his burden of "present[ing] evidence from which a reasonable jury could conclude that the insurer did not have a reasonable good faith belief for withholding payment of [his] claim." Oulds, 6 F.3d at 1436 (citing McCoy v. Oklahoma Farm Bureau Mut. Ins. Co., 841 P.2d 568, 572 (Okla.1992)). He has not shown that defendant's handling of the claim met "the minimum level of culpability necessary for liability against an insurer to attach, [which] is more than simple negligence." Badillo v. Mid Century Ins. Co., 121 P.3d 1080, 1094 (Okla. 2005). As State Farm's alleged errors in its investigation and eventual denial of the claim do not, under the circumstances present here,

---

[20]Plaintiff does not argue that an insurer could not, as a matter of law, rely on breach of a policy condition to withhold coverage.

[21]Plaintiff argues that defendant "never identified any credible evidence that any of the perils identified in the Water Damage Exclusion, alone or aided by wind, caused the initial damage to the dock or later caused it to sink." Doc. #55, p. 10. Again plaintiff ignores contrary evidence in the record. E.g., Doc. #46, Exhibit 3, notes 13, 18. Plaintiff also argues that defendant is trying to "mend its hold," Doc. #74, pp. 12-13, by asserting that the water exclusion precludes coverage. Plaintiff mischaracterizes defendant's argument. Defendant contends that because it was unable to examine the property it could not determine the cause of the loss and whether it was covered under the policy. See Doc. #75, p. 7.

amount to unreasonable conduct, defendant is entitled to summary judgment on plaintiff's bad faith claim based on his September 13, 2008, loss.

Breach of Contract and Bad Faith– September 30, 2008 claim

Defendant contends that plaintiff's failure to report the sinking of the boat dock until over three months after it occurred,[22] coupled with his failure to exhibit the property, bars his second breach of contract claim. Defendant argues that the late notice precluded it from investigating the loss and determining the cause and extent of the damage.

Plaintiff admits he did not report the second loss until March 2009. He asserts he discovered the actual date the dock sank during discovery.   Plaintiff contends that, after he reported that his boat dock had sunk, State Farm realized the connection between his claim and that of his neighbors, the Tremls. He contends that, despite knowing that the two incidents were linked, State Farm never attempted to clarify the date of loss with respect to his second claim or conduct an investigation as to the cause of loss.  He argues that State Farm was not prejudiced by the late reporting because it had access to the information it had obtained through its investigation of the Tremls' claim.  He also faults the insurer for failing to inspect the boat dock, asserting it is "still sitting at the bottom of Grand Lake of the Cherokees."  Doc. #55, p. 2.

Although close, the court concludes a fact question exists with respect to whether

---

[22]*Although there is some evidence that the boat dock sank in September 2008, it appears clear that it sank on November 20, 2011.*

State Farm breached the contract by failing to pay plaintiff's second claim.[23]  Despite the passage of time, State Farm might have been able to evaluate plaintiff's second claim because of the unique circumstance that another insured's boat had sunk along with plaintiff's dock.   The dock possibly could have been inspected, as it had not been moved or repaired, but remained at the bottom of the lake.  Whether, as it asserts, State Farm was s sufficiently prejudiced due to the plaintiff's delayed reporting to warrant its denial of the claim is an issue for the jury.

However, the court concludes that a reasonable jury could not find State Farm acted in bad faith with respect to plaintiff's September 30, 2008, claim.[24]  One of the adjusters assigned to plaintiff's claim, Melanie Schafer, testified she did look at the Treml's claim file. Other than noting that a boat policy is different from a homeowner's policy, she could recall little about the claim or its resolution. Doc. #48, Exhibit 6, pp. 35-36.  Her failure and that of the other State Farm agents assigned to the claim to pursue information in the Treml file that might be pertinent to adjusting plaintiff's loss cannot, under the circumstances present here, be considered anything more than simple negligence, if that.  It is undisputed that the claim was submitted months after the loss.  Plaintiff failed to mention it to State Farm even though he was in contact with defendant in conjunction with his first claim at the time the

---

[23]*Plaintiff also requested summary judgment on his second breach of contract claim.  The existence of disputed facts as to both plaintiff and defendant's compliance with their obligations under the insurance policy precludes the entry of  judgment in either party's favor on this claim.*

[24]*It is unclear when State Farm learned that the Tremls' boat was actually in plaintiff's boat dock when it sank.  The only evidence in the record that specifically references plaintiff's dock, rather than an unidentified dock, is in defendant's second claim file. Doc. #55, Exhibit 11, note 16.*

dock sank.[25]  Because of plaintiff's failure to comply with the policy's requirement that he give State Farm "immediate notice" of a loss, State Farm had a legitimate basis for disputing his claim for coverage.

While the investigation State Farm conducted was minimal, plaintiff again has not shown what relevant information a more thorough investigation would have produced that would have resulted in a different disposition of his claim.  *See* Sims, 469 F.3d at 893 n.18 ("A failure to investigate theory must be based on more than hypothetical loose ends."). Plaintiff overlooks the fact that there was little investigation that could be done because of his failure to report the loss in a timely manner.  He criticizes State Farm for failing to speak to Perry Kurth, yet Kurth's  testimony does not support coverage, as he stated that both wind and waves caused the dock to come down.  Doc. #75, Exhibit 3, pp. 37-38.  Plaintiff has not demonstrated a fact question exists as to whether State Farm's investigation was "unreasonable under the circumstances."  Roberts, 61 Fed.Appx. at 591.

State Farm is entitled to summary judgment on plaintiff's bad faith claim based on his September 30, 2008, loss.  Plaintiff has not produced evidence from which a reasonable jury could conclude State Farm lacked a good faith belief that it had justifiable reason for denying his claim or that its investigation was unreasonable.  *See generally* Flores, 620 F.3d at 1255-56.

---

[25]*Plaintiff testified that he did not mention the sinking immediately "because the initial claim had not been resolved" and he "needed to know where [he] stood on the first claim."  Doc. #46, Exhibit 16, p 100.*

Negligence claim

Plaintiff's remaining claim against State Farm is based on the allegedly negligent representations Marcia Corcoran made to plaintiff regarding coverage. State Farm contends the claim is barred by the statute of limitations. It also asserts that any representations that were made would not excuse plaintiff from complying with the terms and conditions of the policy, that plaintiff was not owed a duty, and that the agent's actions did not proximately cause him any damage.

Defendant contends the negligence claim is untimely because it was added in an amended complaint filed more than two years after the statements on which it is based were made. Defendant argues that the claim does not "relate back," as the allegations of negligence "arise[] out of a different set of facts and circumstances." Doc. #46, p. 28.

A claim relates back to the date of the original pleading under Fed.R.Civ.P. 15(c)(1)(B) when "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out-or attempted to be set out-in the original pleading." Plaintiff alleged in his original petition that he "was informed by said insurance agent that repairs to the boat dock were covered under Plaintiff's insurance policy with Defendant." Doc. #1, Exhibit 1, ¶6. As the negligence claim clearly meets the standard set by Rule 15(c), it relates back. *See* 6A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1497, at 99–104 (3d ed. 2010) ("[I]f the alteration of the original pleading is so substantial that it cannot be said that defendant was given adequate notice of the conduct, transaction, or occurrence that forms the basis of the new claim or defense, then

the amendment will not relate back....").

The court concludes there is sufficient evidence to support the elements of a negligence claim.[26] However, it agrees with defendant that the representations made did not excuse plaintiff from complying with the policy's provisions.[27] Any damage award will be limited to repair costs incurred prior to plaintiff's conversation with State Farm agent Thompson on September 16, 2008.[28]

Accordingly, plaintiff's motion for summary judgment [Doc. #48] is **DENIED**. Defendant's motion for summary judgment [Doc. #46] is **GRANTED** with respect to plaintiff's breach of contract claim based on his September 13, 2008, loss and **GRANTED** with respect to both plaintiff's bad faith claims. Defendant's motion is **DENIED** with respect to plaintiff's breach of contract claim based on his September 30, 2008, loss (the sinking of his boat dock) and his negligence claim.

---

[26]*Defendant cites no pertinent case authority supporting its defense of lack of duty.*

[27]*The court's conclusion is based on Ms. Corcoran's assurance of coverage, rather than any determination that she had a duty to warn plaintiff of State Farm's need to inspect. In his summary judgment motion plaintiff asserts defendant should be precluded from asserting that he breached the contract by failing to comply with post-loss conditions because State Farm did not include those affirmative defenses in its answer. Under Affirmative Defenses defendant alleged that "Plaintiff violated the terms and conditions of the policy. Specifically, Plaintiff violated the 'Duties After Loss' portion of the policy by failing to 'give immediate notice' of the loss to State Farm or its agent, and by failing to 'exhibit the damaged property.'" Doc. #22, ¶ 30*

[28]*The record reflects that State Farm had decided to pay plaintiff the costs he incurred for temporary repairs, but determined that amount did not exceed his deductible.*

**IT IS SO ORDERED**.

Dated this 24th day of January, 2012.


_____
JOE HEATON
UNITED STATES DISTRICT JUDGE